*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>RICHARD ARLAND RICKS,<br><br>　　　　　Debtor.<br>_____<br>HIRST LAW GROUP, P.C.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>RICHARD ARLAND RICKS,<br><br>　　　　　Defendant.<br>_____ | Case No. 19-90464-E-7<br><br><br><br><br><br>Adv. Proc. No. 19-9020<br>Docket Control No. MAS-1 |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

## MEMORANDUM OPINION AND DECISION

Hirst Law Group, P.C. ("Plaintiff") filed the instant adversary proceeding on December 6, 2019, against Richard Arland Ricks ("Defendant-Debtor"). In the underlying bankruptcy proceeding, Plaintiff asserts that it has a claim against the Defendant-Debtor in excess of $100,000.00. The Chapter 7 Trustee having filed a No Distribution Report, no proofs of claim was filed in the Defendant-Debtor's Bankruptcy Case. 19-90464; Report, Dckt. 65.

This Motion for Summary Judgment for denial of a discharge is a core matter proceeding, arising under the Bankruptcy Code for which final orders and judgment are issued by the bankruptcy judge. 28 U.S.C. §§ 1334 and 157(a), and the referral of bankruptcy cases and all related matters

to the bankruptcy judges in this District. ED Cal. Gen Order 182, 223. The Motion for Summary Judgment has been set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(1), with opposition filed by the Defendant-Debtor.

### REVIEW OF THE MOTION FOR SUMMARY JUDGMENT AND OPPOSITION

On January 24, 2020, Plaintiff filed the instant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056. Dckt. 12. Plaintiff asserts that there are no issues of material fact such that Plaintiff is entitled to judgment as a matter of law. Plaintiff adds that if the court is disinclined to grant summary judgment, then Plaintiff seeks summary adjudication as to the 11 U.S.C. § 727(a)(4)(A) claim only. Plaintiff further states that it will dismiss all remaining claims seeking relief pursuant to 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5) if the court grants the summary adjudication as to 11 U.S.C. § 727(a)(4)(A).

The court begins its consideration of the requested relief with the Motion itself and the grounds with particularity stated therein. Fed. R. Civ. P. 7(b), Fed. R. Bankr. P. 7007. The grounds stated with particularity consist of the following:

> Plaintiff Hirst Law Group P.C. ("HLG") hereby moves for summary judgment against defendant Richard Arland Ricks for denial of discharge under 11 U.S.C. § 727(a)(4)(A) pursuant to FRBP 7056. There are no disputed issues of material fact such that HLG is entitled to judgment as a matter of law. Should the Court be disinclined to grant summary judgment, then HLG seeks summary adjudication as to the 11 U.S.C. § 727(a)(4)(A) claim only. If the Court grants HLG's summary adjudication motion as to the 11 U.S.C. § 727(a)(4)(A) claim, HLG will dismiss all the remaining claims so as judgment can be entered on the 11 U.S.C. § 727(a)(4)(A) claim singly.

Motion, Dckt. 12. The above is the entirety of what is stated in the Motion.

**Additional Documents Filed With the Motion**

A Memorandum of Points and Authorities in support of the Motion was also filed. Dckt. 18. The Points and Authorities begins with a rich statement of particular factual grounds and events upon which the Motion is based. The Points and Authorities then, beginning on page 3, provides the legal authorities and arguments applying the legal authorities to the "grounds" as stated in the first two pages of the Points and Authorities.

Next, the Declaration of Mark A. Serlin, counsel for Plaintiff has been filed. Dckt. 14.

Mr. Serlin's testimony relates to the 2004 Examination he conducted of the Defendant-Debtor.

The Declaration of Michael Hirst is also provided. Dckt. 16. He testifies to representing the Defendant-Debtor, beginning in 2013, in a federal False Claims *qui tam* action. Mr. Hirst further testifies that in April 2015 the Defendant-Debtor obtained a payment of $1,287,000.00. Not satisfied, Defendant-Debtor asserted a claim against Mr. Hirst's firm concerning that representation. Mr. Hirst's firm prevailed and has a claim against the Defendant-Debtor arising therefrom.

In August 2019, Mr. Hirst was told by Brian Soriano, that Mr. Soriano was representing the Defendant-Debtor in a new *qui tam* action. Further, that he was seeking to have Mr. Hirst's firm assist in that new action, which was projected to be 5 to 15 times the value of the $1,287,000.00 successful recovery in the prior case in which Mr. Hirst represented the Defendant-Debtor.

Additionally, the following documents have been provided (Dckt. 15):

- Exhibits A: Defendant-Debtor Richard Rick Rule 2004 Examination Transcript (including the exhibits attached to the subpoena)

- Exhibit B: Transcript of Record Proceedings for September 16, 2019 (Trustee Irma Edmonds Presiding)

and at Dckt. 17:

- Exhibit A: copy of the Arbitration Award Judgment for attorney's fees and costs

- Exhibit B: copy of email communication between Brian Soriano and Michael Hirst

**Additional Pleadings Filed**

At the initial hearing on the Motion, the court addressed with Plaintiff's counsel the shortcomings in the Motion. Civil Minutes, Dckt. 23. Rather than having the Motion denied without prejudice, Plaintiff agreed to file a Supplement to the Motion that states the grounds upon which the relief is requested. The Defendant-Debtor appeared at the hearing and the court set the deadline for filing opposition. Replies, if any, by Plaintiff were allowed to be presented orally at the hearing.

<u>Plaintiff Supplemental Pleadings</u>

On March 16, 2020, Plaintiff filed a Supplement to Motion for Summary Judgment and Alternatively for Summary Adjudication. Dckt. 27. Plaintiff states the following grounds upon

which relief is requested:

1. At the Rule 2004 examination ("Examination") conducted by Plaintiff, Defendant-Debtor admitted that he was a claimant in a *qui tam* action and was being represented by an attorney in San Francisco.

2. Defendant-Debtor also admitted at the Examination that he knew he had such *qui tam* claim prior to the filing of the within bankruptcy.

3. This admission completely contradicts Defendant-Debtor's Schedules, and specifically question 33 on Schedule B relating to claims against third parties whether or not suit had been filed thereon.

4. Further, in his filed answer in the instant adversary proceeding, Defendant-Debtor made no effort to dispute that he knew he had such *qui tam* claim prior to filing for bankruptcy and had failed to list it in his bankruptcy schedules.

5. Defendant-Debtor, instead, tried to sidestep the issue by claiming that he was not a named plaintiff in any pending action.

6. Moreover, Defendant-Debtor's attorney in the unscheduled *qui tam* claim has opined to Plaintiff that the unscheduled *qui tam* claim is worth 5-15 times the amount of the prior *qui tam* claim from which Defendant-Debtor received $1.287 million in 2016.

7. Defendant-Debtor did not disclose such valuable claim anywhere in his schedules, and then confirmed the accuracy of those schedules at his section 341 meeting.

Defendant-Debtor Richard Arland Ricks

On March 25, 2020, Plaintiff filed an Opposition. Dckt. 29. Defendant-Debtor filed an opposition, arguing the following:

1. Plaintiff's Motion claims Defendant-Debtor failed to inform about a *qui tam* case in which he is the plaintiff.

2. While Defendant-Debtor has attempted to pursue such claims, to date, no claim has been filed and there is no plan for such action to be filed.

3. As supported by the Declaration of Brian Soriano, Debtor's efforts at pursuing *qui tam* claims have been unsuccessful, in part due to the moving party's statements to the interested law firms.

4. Defendant-Debtor denies having concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve information and/or documents.

5. Defendant-Debtor was married to an accountant for 25 years and that he has never kept custody of documents or financial records and any information or documents related to his finances were submitted by his ex-wife Joy L. Hughes in her deposition with Mr. Serlin ("Plaintiff's Counsel") last year. Adding that he told counsel that the only documents he had failed to provide was the pink slip for his motorcycle.

4

6. Defendant-Debtor admits he signed his bankruptcy petition and answered "no" to the question of any pending lawsuits. This statement is true and correct. No filings have been made at the city, county, state, or federal level regarding a *qui tam* case. Defendant-Debtor's understanding of the question being that a case has been filed.

7. All financial information, including bank statements were provided to Plaintiff's Counsel under Defendant-Debtor's former wife's deposition, which clearly explains the dissipation of funds.

8. Defendant-Debtor could not afford the $240.00 to obtain a copy of his deposition but he is very clear on the matters stated above.

Defendant-Debtor has signed the Opposition as if it were a declaration.

Debtor also filed the Declaration of Brian E. Soriano. Dckt. 30. Under penalty of perjury, Mr. Soriano testifies that he is an attorney presently assisting Debtor (since 2019) in finding a leading law firm with the resources and experience to prosecute a *qui tam* action. According to Mr. Soriano, two law firms have declined taking Defendant-Debtor's case after speaking with Plaintiff. He also testifies that at this point no case has been filed and that to his knowledge no commitment from any firm exists to pursue the claim. Further, Mr. Soriano asserts that to his knowledge Debtor is not a claimant in any pending *qui tam* action and that he has no intention of filing said action without the commitment and support of a national firm experienced in handling a whistleblower action.

**REVIEW OF THE COMPLAINT AND ANSWER**

Plaintiff seeks a determination that the Defendant-Debtor be denied a discharge in his Chapter 7 Bankruptcy Case as provided in 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), and 727(a)(5); alleging that Defendant-Debtor failed to keep or preserve recorded information related to Defendant-Debtor's financial condition or business transaction; Defendant-Debtor made false statements and/or omissions in the Defendant-Debtor's Schedules and Statement of Affairs; and Defendant-Debtor failed to satisfactorily explain the dissipation of monies allegedly received by Defendant-Debtor. Complaint, Dckt. 1. The basis of such claims are stated in the Complaint:

A. As it pertains to 11 U.S.C. § 727(a)(3), Plaintiff alleges that Defendant-Debtor claimed at a Rule 2004 examination that he had no banking or other documents whatsoever regarding his income, assets, expenditures, and the like notwithstanding his receipt of a subpoena under F.R.B.P. 2004 compelling such production such that discharge under this section is

appropriate.

B. As it pertains to 11 U.S.C. § 727(a)(4)(A), Plaintiff alleges that Defendant-Debtor testified in a Rule 2004 examination that he had a large *qui tam* claim which he knew to exist before he filed for bankruptcy which he did not disclose in his sworn schedules in this bankruptcy case such that discharge under this section is appropriate.

C. As it pertains to 11 U.S.C. § 727(a)(5), Plaintiff alleges that Defendant-Debtor has failed to satisfactorily explain the dissipation of over $1.2 million in cash received by Debtor in May 2016 and the fact that there are now no assets to distribute to creditors of Defendant-Debtor, such as Plaintiff, such that denial of discharge under this section is appropriate.

**Review of the Answer**

In response, Defendant-Debtor filed an Answer to the Complaint on January 6, 2020, Dckt. 9, in which Defendant-Debtor counters:

A. As to the allegation that Debtor failed to keep or preserve recorded information, Defendant-Debtor denied having concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve information and/or documents.

B. Defendant-Debtor states that he has been married to an accountant for 25 years and that he never kept custody of documents or financial records and any information or documents related to his finances were submitted by his ex-wife Joy L. Hughes in her deposition with Mr. Serlin ("Plaintiff's Counsel") last year. Adding that he told counsel that the only documents he had failed to provide was the pink slip for his motorcycle.

C. Defendant-Debtor admits that he signed his bankruptcy petition and answered "no" to the question of any pending lawsuits. Defendant-Debtor then states that no *qui tam* lawsuit has been filed at the city, county, state, or federal level. Defendant-Debtor's understanding of the question being that a case has been filed.

D. Defendant-Debtor states that all financial information, including bank statements were provided to Plaintiff's Counsel under Defendant-Debtor's former wife's deposition, which Defendant-Debtor states explain the dissipation of funds.

E. Defendant-Debtor advises the court that he could not afford the $240.00 to obtain a copy of his deposition but he is very clear on the matters stated above.

## APPLICABLE LAW

**Summary Judgment**

In an adversary proceeding, summary judgment is proper when "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.11[1][b] (3d ed. 2000). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza )*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

In response to a sufficiently supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial. *Barboza*, 545 F.3d at 707, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The nonmoving party cannot rely on allegations or denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that a dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a summary judgment motion, the court must view all of the evidence in the light most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing *County. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage [,] the judge's function is not

himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**Denial of Discharge**

Congress provides various grounds for a debtor to be denied a discharge in a bankruptcy case. Several grounds are stated in the Complaint, but the Motion for Summary Judgment seeks summary judgment or partial summary judgment pursuant only to 11 U.S.C. § 727(a)(4)(A), based upon the debtor knowingly making a false oath. This section provides:

> 11 U.S.C. § 727(a)(4)(A)- False Oaths
>
> (a) The court shall grant the debtor a discharge, unless—
> . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account . . . .

11 U.S.C. § 727(a)(4)(A).

As discussed in 6 Collier on Bankruptcy P 727.04[a], [(16th 2019) relating to the denial of discharge for such a false oath]:

> [a] False Oath or Account Must Be Knowing and Fraudulent
>
> [T]he false oath must have been knowingly and fraudulently made. A discharge should not be granted when a debtor has knowingly and fraudulently made a false oath or account in connection with a bankruptcy case . . . The requisite intent, moreover, may be discovered by inference from the facts. "A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." However, a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent . . .
>
> [b] False Oath or Account Must Be Material
>
> The false oath must have related to a material matter. The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property . . .
>
> > In determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's

8

      pre-bankruptcy dealing and financial condition . . .

[2] False Oath or Declaration in Schedules

A common instance of "false oath" is when a debtor declares that the schedule of property is "true and correct" and it appears that the debtor has knowingly and fraudulently omitted assets from it. But if items were omitted by mistake or upon honest advice of counsel, to whom the debtor had disclosed all the relevant facts, the declaration will not be deemed willfully false, and the discharge should not be denied because of it. A debtor coming forward of his or her own accord to correct an omission is strong evidence that there was no fraudulent intent in the omission . . .

[3] False Oath or Declaration on Examination

A debtor may also be denied a discharge for making "false oaths" at hearings during the case if the statements are knowingly and fraudulently false. This includes statements made by the debtor when being examined at creditors' meetings, or at other hearings during the course of the case.

The false oath must have related to a material matter. *Retz v. Samson* (*In re Retz*), 606 F.3d 1189 (9th Cir. 2010); *Coccia v. Fischer* (*In re Fischer*), 2 C.B.C.2d 305, 4 B.R. 517 (Bankr. S.D. Fla. 1980) ("[a] bankruptcy discharge may be denied under § 727(a)(4)(a) only if the false oath related to a … matter … material to the condition of the estate or the debtor's entitlement to discharge").

The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property. *Van Robinson v. Worley*, 849 F.3d 577 (4th Cir. 2017) (valuation of only significant nonexempt asset at less than one-fifth its value was material); *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 11 C.B.C.2d 1159 (11th Cir. 1984); *In re Weiner*, 208 B.R. 69 (B.A.P. 9th Cir. 1997) (undervaluation of assets intended to keep property from creditors).

**DISCUSSION**

**Cause of Action Pursuant to**
**11 U.S.C. § 727(a)(4)(A)- False Oaths**

The court begins with going back and looking at the Schedules completed by Debtor under penalty of perjury. On Schedule A/B, Debtor discloses all of real and personal property assets, including any claims (whether contingent, disputed, unliquidated or the like) against any other

9

person.

The court notes that Debtor's Schedules as they pertain to personal property are interesting in that Debtor states under penalty of perjury that he has: (A) no household goods or furnishings (Question 6); (B) no electronics, such as a TV, radio, stereo, computer, cell phone, or camera (Question 7); (C) no jewelry, such as a watch (Question 12); no cash (Question 16); and (D) no checking, savings, or other account of any kind (Question 17). 19-90464; Schedule A/B, Dckt. 1.

Of specific importance to the matter now before the court, is Defendant-Debtor's response to Questions 33, 34, 35 of Schedule I, to which he responded "No," which are:

> 33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment
> Examples: Accidents, employment disputes, insurance claims, or rights to sue
>
> 34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims
>
> 35. Any financial assets you did not already list.

*Id.*

On the Statement of Financial Affairs filed by Debtor, he states having no income in 2017 and 2018, and income of $1,900.00 in 2019. *Id.*; Statement of Financial Affairs, Questions 4, 4; Dckt. 1.

Statement of Financial Affairs Question 9, to which Defendant-Debtor stated "No," asks:

> **9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
> List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

*Id.*; Dckt. 1 at 38. This question asks whether the Defendant-Debtor was a party to a lawsuit, as compared to Schedule A/B which inquires about any possible claims that the Defendant-Debtor may have had.

The Schedules and Statement of Financial Affairs were completed with the assistance of Nick Ditaranto, a document petition preparer. *Id.*; Petition Preparer's Notice, Dckt. 1 at 46-47.

///

10

**Evidence of False Oath by Plaintiff**
**and Counter-Evidence by Defendant-Debtor**

Plaintiff provides facts that show that Debtor indeed gave a false oath. Debtor's evidence in opposition is consistent with that presented by Plaintiff. As was evident at the April 2, 2020 hearing, Debtor's defense focused on what happened after the bankruptcy case was filed and what he perceives to be the negative action taken by Plaintiff with respect to Debtor's attempts to prosecute the undisclosed claim, and include Plaintiff in the prosecution of such claim.

The court now reviews the evidence presented by Plaintiff and Defendant-Debtor.

**Evidence of Debtor's Statements**
**Presented By Plaintiff**

Debtor, under the penalty of perjury, filed his schedules without disclosing the potential *qui tam* action information. Debtor attended his Section 341 meeting and he again provided a false oath when he confirmed the schedules he had filed as true and correct.

Specific statements by the Defendant-Debtor with respect to the accuracy of his Schedules include the following:

| | | |
|---|---|---|
| MS. EDMONDS: | | Did you read and review your bankruptcy petition? |
| MR. RICKS: | | Yes, I did. |
| MS. EDMONDS: | | Did you sign the petition before it was filed with the court? |
| MR. RICKS: | | Yes, I did. |
| MS. EDMONDS: | | And did you list all of the real and personal property that you own or have a right to? |
| MR. RICKS: | | Yes, I did. |
| MS. EDMONDS: | | Did you list all of your creditors? |
| MR. RICKS: | | Yes, I did. |
| MS. EDMONDS: | | Is all of the information in your bankruptcy petition true and correct? |
| MR. RICKS: | | Yes, it is. |

Exhibit C, 341 Meeting Transcript, p. 3; Dckt. 15.

1     Plaintiff then directs the court to the transcript from the 2004 examination of the Defendant-
2 Debtor conducted by Plaintiff's counsel.

-Page 24 -

```
 7  Q.  Now, are you a plaintiff or potential plaintiff
 8      in any other whistleblower actions?

 9  A.  Yes.

10  Q.  Okay.· And what are those?

11  A.  I can't speak on that.

12  Q.  You say you cannot speak on that.· Why not?

13  A.  I've been instructed by the Federal Bureau of
14      Investigation.

15  Q.  Oh, okay.· So you reported something of -- of a
16      whistleblower to the FBI?

17  A.  Sir, I'm very uncomfortable speaking on that.
18      Okay?

19  Q.  Okay.· Well, can you tell me when you first
20      made this report?

21  A.  Sir, by instructions of -- of the -- I'm not
22      going to have any conversation regarding that matter.

23  Q.  Okay.· Let me ask it this way:· Did you become
24      aware of the facts or circumstances that give rise to
25      this other potential whistleblower claim before you
```

-Page 25-

```
 1      filed for bankruptcy?· Which was this year, of course.

 2  A.  Repeat your question.

 3  Q.  Did you become aware of the facts or
 4      circumstances giving rise to this potential
 5      whistleblower claim prior to the time that you filed for
 6      bankruptcy?

 7  A.  Yeah.

 8  Q.  Okay.· Are you represented by counsel in
 9      connection with this other potential whistleblower
10      claim?

11  A.  I'm not going to respond to any questions
12      regarding the whistleblower matter, sir.
```

Exhibit A, 2004 Examination Transcript, pp. 24-25 (identified by line number of the transcript); Dckt. 15.

Plaintiff also provides the Declaration of Michael Hirst, the founding attorney of the Plaintiff. He testifies as to the claim that Plaintiff has against Defendant-Debtor. Dckt. 16. Hirst also provides evidence of the undisclosed whistleblower claim and that Defendant-Debtor and his non-bankruptcy counsel believed it to be of substantial value in the form of an e-mail from Brian Soriano to Michael Hirst in August 2019.

**Opposition Evidence Presented by Debtor**

In his Opposition stated under penalty of perjury, Defendant-Debtor provides the court with the following evidence to counter that presented by Plaintiff:

> While I have attempted to pursue such claims, to date, no claim has been filed and there is no plan for such action to be filed.

Opposition Statement Under Penalty of Perjury, p. 1:22-23; Dckt. 29.

> [m]y efforts at pursuing these *qui tam* claims have been unsuccessful, in part due to the moving party's statements to the interested law firms.

*Id.*, p. 1:23-25.

> I have not concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve information and/or documents. I was married to an accountant for 25 years. I have never kept custody of any statements, documents and/or financial records.

*Id.*, p. 1:26-28.

> Under the penalty of perjury, I signed my bankruptcy petition and answered "no" to the question of any pending lawsuits. This statement is true and correct. There has been no filing of any case at the city, county, state or federal level regarding a *qui tam* case. My understanding of the question posed means that a case has been filed.

*Id.*, p. 2:4-7.

> All financial information, including bank statements were provided to Mr. Serlin under my former wife's deposition. This clearly explains the dissipation of funds.

*Id.*, p. 2:8-9.

While responding about lawsuits, the Defendant-Debtor does not address the failure to list the possible claim on Schedule A/B. In the Supplement to the Motion filed by Plaintiff, this failure to disclose the asset, not merely whether a lawsuit was filed, is stated with particularity:

13

> **This admission totally contradicts his sworn schedules, and specifically question 33 on schedule B** relating to claims against third parties whether or not suit had been filed thereon. Critically, in his filed answer in this adversary proceeding, Ricks made no effort to dispute that he knew he had such qui tam claim prior to filing for bankruptcy and that he failed to list it in his bankruptcy schedules and instead tried to sidestep the issue by claiming that he was not a named plaintiff in any pending action.

Supplement to Motion, p. 2:10-15; Dckt. 27.

The Motion specifically directs the Defendant-Debtor to the listing of the claim as property, not the question of whether any litigation is pending. The Defendant-Debtor fails to address that failure to disclose a claim, not "merely" whether a lawsuit had been filed.

<u>Declaration of Brian Soriano</u>

Defendant-Debtor provides the Declaration of Brian Soriano as part of his Opposition to the Motion for Summary Judgment. Mr. Soriano testifies under penalty of perjury:

> 1. I am an attorney in good standing licensed to practice in the Courts in the State of California. . . .
>
> . . .
>
> 3. In 2019, I was investigating facts and circumstances brought to my attention by Mr. Ricks that suggested there were additional violations similar to those involved in Mr. Ricks' previous whistleblower case that were actionable against some of the same parties as well as some additional companies not identified in the prior action.
>
> 4. In August of 2019, I sent an email to Michael Hirst, with Mr. Ricks' authorization, inviting him to participate in the second whistleblower action as a co-counsel representing Mr. Ricks. Days later, I received a response declining the invitation to participate in the second whistleblower case.

Declaration (identified by paragraph number used in the Declaration); Dckt. 30. Mr. Soriano's testimony concerning this whistleblower claim does not state that the Defendant-Debtor did not believe he had such a claim and had not communicated with Mr. Soriano when the bankruptcy case was filed in April 2019, but only that "Mr. Ricks is not a claimant in any pending *qui tam* action and I do not represent him in any active litigation matters." Declaration, p. 2:21-22; *Id.* As with the Defendant-Debtor's statements under penalty of perjury in his Opposition, Mr. Soriano does not address the evidence and clearly states basis that Defendant-Debtor knew of the whistleblower claim that he desired to assert and failed to disclose it on his Schedules filed in the Bankruptcy Case.

///

///

Additional Statements by Soriano Concerning
the Whistleblower Claim

In connection with Mr. Soriano's legal services for the Defendant-Debtor, Mr. Hirst provides additional information. Mr. Hirst, for the Plaintiff, provides his testimony that the prior *qui tam* action, which was quite successful, with the Defendant-Debtor recovering $1.287 Million in April 2016. Declaration, ¶ 3. Mr. Hirst testifies that he received an e-mail from Mr. Soriano dated August 21, 2019, a copy of which is provided as Exhibit B, Dckt. 17. Rather than quoting Mr. Hirst paraphrasing the e-mail, the text from the e-mail sent by Mr. Soriano includes:

> We were introduced around the time that Richard Ricks first retained your office to assist him in his Qui Tam claims. Since your successful resolution of that matter, **Mr. Ricks has uncovered additional, similar violations wherein service contractors are defrauding the government.** I have **communicated with witnesses and explored with Richard the contractual issues in the case and believe there is another action where subsequent violations by** [redacted in original] and [redacted in original] **can be shown**, as well as related violations by additional service providers. The basis for the claim appears strong and we already have the interest of the FBI and involvement by a special agent in the Army's CID.
> . . .
>
> [W]hile it is difficult to estimate the value of the present action, **I do have reason to believe it could be anywhere from 5-15 times greater than the previous action you and Richard resolved**. This is due to the number of violations, the fact that [redacted in original] and [redacted in original] have committed these violations after previously being fined by the Government, and the fact that it appears likely that this action will be pressed with the threat of a criminal prosecution due to the FBI's interest, rather than as a civil matter. Given the amount of recovery at stake, I am open to sharing in the recovery as an expense in order to bring in a lawyer with your experience in these matters to help maximize the recovery and ensure that the action is successful.

Exhibit B, August 21, 2019 E-mail from Brian Soriano to Michael Hirst; Dckt. 17 at 3-4 (emphasis added).

Mr. Soriano demonstrates that as of August 21, 2019, substantial investigation had been done and the Defendant-Debtor believed that Defendant-Debtor had highly valuable claims. Mr. Soriano states a projected value (before expenses) of the whistleblower claim of $6.4 Million to $19.3 Million. Even allowing for a "plaintiff's counsel exuberance" by Mr. Soriano, in light of Defendant-Debtor's prior success in identifying such claims, Defendant-Debtor and Mr. Soriano were aware of some very substantial claims that Defendant-Debtor believed he could prosecute.

Defendant-Debtor's Chapter 7 case was filed on May 21, 2019, three months before

15

1 Mr. Soriano sending his e-mail touting the highly valuable claims that Defendant-Debtor was
2 seeking to prosecute with Mr. Soriano's assistance. Mr. Soriano's e-mail and testimony do not
3 identify how long he had been working on investigating this new claim with the Defendant-Debtor.

### Debtor's Admission of Knowledge of Grounds for Claim

As discussed above, in his 2004 Examination Defendant-Debtor admits that he became aware of this claim that he was to prosecute and for which he engaged Mr. Soriano, stating under penalty of perjury in the 2004 Examination:

```
             -Page 24 -
    23.  Q.  Okay.· Let me ask it this way:· Did you become
    24       aware of the facts or circumstances that give rise to
    25       this other potential whistleblower claim before you
             -Page 25 -
    1        filed for bankruptcy?· Which was this year, of course.
    2   A.   Repeat your question.
    3   Q.   Did you become aware of the facts or
    4        circumstances giving rise to this potential
    5        whistleblower claim prior to the time that you filed for
    6        bankruptcy?
    7   A.   Yeah.
```

2004 Examination (identified by page and line numbers); Dckt. 15.

Defendant-Debtor unequivocally states that he was aware the facts and circumstances that existed upon which he would assert. This is consistent with Mr. Soriano's statements in his e-mail, which by August 21, 2019, just three months after the bankruptcy case was filed, he had communicated with witnesses, identified other possible defendants, and had developed "the interest of the FBI and involvement by a special agent in the Army's CID," as well as he was "trying to finalize the complaint and prepare for its filing." Exhibit B, Dckt. 17.

### **Countervailing Circumstances**

The one anomaly concerning this matter is the conduct of Plaintiff with respect to Debtor's failure to disclose this potentially valuable claim. Plaintiff has been represented by knowledgeable, experienced counsel. Plaintiff, who holds approximately 96% of the debt owed by Debtor, did not

contact the Chapter 7 Trustee and advise of this valuable, undisclosed claim. Plaintiff, whose expertise is in the area of law involving this claim could have not only advised the Trustee of this claim, but could well have assisted the Trustee in the prosecution of this claim.

If such a claim existed and was of a value in the range stated by Mr. Soriano, the Trustee would only need to recover 10% of the low end value stated by Mr. Soriano to be able to pay all claims in full, the expenses of administration, and still have something to turn over to the Debtor from a surplus estate. If such a claim of value existed, the last thing Plaintiff would want to do is not have it disclosed to the Trustee and the Trustee administer the claim as property of the bankruptcy estate. If not disclosed, the claim would not be abandoned at the conclusion of the case back to the Debtor, would remain in the bankruptcy estate, and never prosecuted due to Plaintiff and Debtor's silence.

Thus, to the extent that such a claim actually existed, Plaintiff had every legal incentive in the world to communicate that information to the Chapter 7 Trustee, not to keep that information undisclosed (Plaintiff having no legal obligation to disclose it) and preclude such an asset from being administered, Plaintiff paid, and Plaintiff continuing to move on, freed from the entanglement with a disfavored former client.

This was discussed at the hearing. Though the English playwright and poet William Congreve may have believed that "Hell hath no fury like a woman scorned" (*The Mourning Bride*, 1697), one exception to that may well be a lawyer who believes that his client, for whom a successful result has been obtained, has turned on the attorney and disputes the previously agreed compensation to be paid that attorney. While the Defendant-Debtor finds it unreasonable that the Plaintiff did not jump at the opportunity to join with Defendant-Debtor and Mr. Soriano shortly after the bankruptcy case was filed, and then prosecute this whistleblower claim, such does not surprise the court.

However, whatever motivation of Plaintiff (whether that the possible claim was of no value or that Plaintiff hoped to obtain the claim post-bankruptcy), the evidence shows that Defendant-Debtor knew of and was actively pursuing such whistleblower claim with Mr. Soriano and that Mr. Soriano was representing that it had substantial value.

Sufficient grounds have been established for the obligation to be nondischargeable pursuant to 11 U.S.C. § 727(a)(4)(A).

**No Relief Sought Pursuant to**
**11 U.S.C. § 727(a)(3) and § 723(a)(5)**

In the Complaint, Plaintiff includes in the final paragraph the following statement of statutory grounds for denial of Defendant-Debtor's discharge in his Chapter 7 case:

> 9. In light of the foregoing, Debtor should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), and/or 727(a)(5).

In the Supplement to the Motion, Plaintiff seeks summary judgment only based on the failure of Defendant-Debtor to disclose the claim(s) that he and Mr. Soriano were actively prosecuting in 2019. 11 U.S.C. § 727(a)(4)(A).

In the Motion, Plaintiff states that if relief is granted pursuant to 11 U.S.C. § 727(a)(4)(A), then the other grounds will be dismissed.

## GRANTING OF PARTIAL SUMMARY JUDGMENT

As stated above, the court has uncontradicted evidence that Defendant-Debtor knew of the whistleblower claim when the case was filed and did not disclose it on Schedule A/B. Defendant-Debtor then "confirmed" under penalty of perjury to the Trustee that he had no such a claim at the First Meeting of Creditors.

Though having filed the bankruptcy case, the Defendant-Debtor worked with his counsel, Brian Soriano, to actively investigate and prosecute such claim, which Mr. Soriano opined was worth $6.4 Million to $19.3 Million. This included attempting to obtain the assistance of the Hirst Law Group, P.C., the Plaintiff, and then other law firms, to prosecute that claim for the Defendant-Debtor.

At no point did the Defendant-Debtor or his non-bankruptcy counsel report that such a claim existed to the Chapter 7 Trustee. The Hirst Law Group, P.C., a creditor in this case, also did not report to the Chapter 7 Trustee that such a claim may exist.

Defendant-Debtor offers no defense or evidence to explain why and how his response to Question 33 on Schedule A/B requiring disclosure of all "Claims against third parties, whether or

18

not you have filed a lawsuit or made a demand for payment" was "No." Defendant-Debtor only testifies that he responded "No" to questions about whether he has commenced a lawsuit concerning such claims.

The evidence presented is uncontradicted that Defendant-Debtor knew of the whistleblower claim when it was filed, this claim may have substantial value, Defendant-Debtor has previously engaged in having such claims profitably prosecuted, and Defendant-Debtor offers no evidence showing that the failure to disclose the existence of the claim (as opposed to saying that there is no litigation) was a mere mistake or arose due to excusable neglect.

The Motion is granted and the court enters a partial summary judgment for Plaintiff that Defendant-Debtor is denied his discharge in Chapter 7 bankruptcy case 19-90464 pursuant to 11 U.S.C. § 727(a)(4)(A) for having made a false oath in failing to list the whistleblower claim that Defendant-Debtor knew the facts of and was preparing to prosecute.

The Motion is denied without prejudice, to the extent Plaintiff believes it was asserting, as to any other claims in the Complaint.

Though this granting of partial summary judgment may well result in Defendant-Debtor being denied a discharge, it has clearly been brought to light that a potential substantial whistleblower claim may be property of the bankruptcy estate in Defendant-Debtor's case. Such claim, even after paying the costs of prosecuting such a claim, payment of the Chapter 7 Trustee's fees (which expense could be, even at the lower $6 Million value estimate, in the $200,000.00 range), payment of other administrative expenses, and payment of claims in full, could yield a substantial surplus estate to be disbursed to the Debtor when the bankruptcy case is closed.

Thus, as is often the magic of bankruptcy, the Defendant-Debtor, Plaintiff, and Mr. Soriano may all have a common ground to work with the Chapter 7 Trustee to maximize the recovery of such possible claim.

**Dated:** April 13, 2020

By the Court

_____
Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Mark A. Serlin, Esq.<br>701 E Street<br>Sacramento, CA 95814 | |